OPINION
{¶ 1} Appellant, George S. Hawn, appeals the April 9, 2002 judgment entry of the Portage County Court of Common Pleas, in which he was convicted of robbery and sentenced.
 {¶ 2} Appellant was indicted on November 1, 2001, and charged with robbery, in violation of R.C. 2911.02, a felony of the second degree. At his arraignment on November 5, 2001, he entered a plea of not guilty to the charge. On March 1, 2002, appellant filed a motion to suppress the photo array identification made by the victim and other witnesses. A suppression hearing was held on March 4, 2002. Thereafter, on March 6, 2002, the trial court overruled the motion to suppress. A jury trial commenced on March 26, 2002.
 {¶ 3} At the trial, Patrolman Ronald A. Stephenson ("Patrolman Stephenson") of the Ravenna City Police Department took the stand and related that while he was on duty on the afternoon of October 17, 2001, he noticed a suspicious gray vehicle parked behind a building where the CVS Pharmacy and Family Dollar Store were located. The area where the automobile was parked was not a parking lot. Patrolman Stephenson ran the license plate of the car and confirmed that it had not been reported stolen. He also noticed that the keys were in the ignition and discovered that appellant was the owner of the vehicle.
 {¶ 4} Officer Scott Krieger ("Officer Krieger") of the Ravenna City Police Department testified that he was on patrol that day and was dispatched to the area. He observed the gray vehicle for about twenty minutes and then left to refuel his cruiser. Within minutes, Officer Krieger was informed through dispatch that a robbery had occurred at the Family Dollar Store, so he immediately returned to the scene. He spoke to Christine Hanick ("Hanick"), the clerk at the Family Dollar Store, who was "visibly shaken." He noticed her eye was red and watery. Hanick told Officer Krieger that "[a] man came up to the counter, a man told her to give *** him all her money. She thought he was joking. *** [H]e repeated it again, at which point she stated no. And at that point he lunged across the counter and punched her in the eye ***. At that point, the man reached into the drawer, she thought he grabbed a handful of five dollar bills and then left the store." When Hanick testified, she corroborated that this is what occurred.
 {¶ 5} Detective Lisa Blough ("Detective Blough") of the Ravenna City Police Department became involved in the robbery investigation at the Family Dollar Store. She spoke with Hanick and noticed that "[s]he was shaken, *** she was just very upset ***." Hanick gave a physical description of the perpetrator that matched the description of the owner of the gray vehicle. Detective Blough then received a photo image of appellant from the Ohio Bureau of Motor Vehicles ("BMV") and showed it to Hanick. According to Detective Blough, Hanick "immediately recognized this as being the person who had been in the store and assaulted her." Detective Blough revealed that no other photo identification was done because Hanick had made a positive identification of appellant. Detective Blough then separately showed the image to Davonna Desko ("Desko"), another employee of the Family Dollar Store, who was also able to identify appellant. Desko further testified that she went out the back door of the Family Dollar Store to take a smoke break and she noticed "a gray car sitting behind the building." Desko found this strange because nobody parked back there since "[i]t's not a parking lot *** it's like a little side road."
 {¶ 6} Patricia Roe ("Roe"), the shift supervisor for CVS Pharmacy, related that she was behind the building and "saw a man run around the side of the corner, he stopped when he was trying to get into the car and stared right at us. *** [H]e kind of looked confused and *** [t]hen he got in the car, backed up in a hurry, almost hit the building and took off across the parking lot down Vine Street." Roe identified appellant as the man that she saw that day. Lisa Matty ("Matty"), who was outside with Roe that day, also testified that she saw a man running to his car. She verified that the man she saw that day was appellant. Appellant was arrested on October 29, 2001.
 {¶ 7} Appellant was found guilty of robbery. A sentencing hearing was held on April 2, 2002. On April 9, 2002, appellant was sentenced to a term of imprisonment of seven years. Appellant received one hundred fifty-five days credit for time served and was assessed costs. He timely filed this appeal and now assigns the following as error:
 {¶ 8} "[1.] [Appellant] was unduly prejudiced when the prosecutor committed misconduct in [the] opening statement[.]
 {¶ 9} "[2.] The trial court abused its discretion when it failed to grant a mistrial or provide a curative instruction when the investigating detective testified concerning [appellant] and a similar incident that had occurred[.]
 {¶ 10} "[3.] The trial court denied appelllant [sic] due process under the Fourteenth Amendment due to the fact he was found guilty of robbery, pursuant to [R.C.] 2911.02, when said conviction was not based upon sufficient evidence displaying appellant's guilt beyond a reasonable doubt and the jury's verdict was inconsistant [sic] with the evidence and testimony presented at trial[.]
 {¶ 11} "[4.] Appellant was denied due process when the trial court overruled the motion to suppress the identification of appellant and prejudiced the jury against [appellant]."
 {¶ 12} For the first assignment of error, appellant argues that he was prejudiced when the prosecutor committed misconduct by presenting appellant's photograph during opening statements.
 {¶ 13} In reviewing a claim of prosecutorial misconduct, we must examine whether the prosecutor's actions were improper, and whether the conduct so prejudiced the defendant as to deprive him of a fair trial.State v. Lott (1990), 51 Ohio St.3d 160, 165; State v. Loza (1994),71 Ohio St.3d 61, 78. Misconduct, if it exists, is evaluated within the context of the entire trial. State v. Keenan (1993), 66 Ohio St.3d 402,410.
 {¶ 14} In the instant matter, the prosecutor displayed the BMV image that was used by the detective at the crime scene. Appellant's attorney objected to the use of the image, and a side bar discussion took place. Detective Blough testified as to the procedure she used in obtaining the BMV photograph. She identified the BMV image as the photograph that she used to investigate at the crime scene. The image was shown to Hanick, Desko, Roe and Matty. All four of the witnesses at separate times identified the man in the image as the man they saw that day. We do not believe that the image used during the opening statement, in which the prosecutor stated what the evidence was expected to show, prejudiced appellant. Furthermore, the jury was instructed that opening statements are not evidence.
 {¶ 15} Nonetheless, we would caution prosecutors from attempting to identify specific documentary evidence or real evidence in opening statements as some exhibits may not come in as evidence. However, any error that occurred was harmless because appellant was not prejudiced and has failed to demonstrate that the alleged misconduct of displaying the image during opening statements would have resulted in a different verdict. Therefore, after reviewing the alleged misconduct within the context of the entire trial, we conclude that appellant was not denied a fair trial. Appellant's first assignment of error is without merit.
 {¶ 16} Under the second assignment of error, appellant alleges that the trial court abused its discretion when it failed to grant a mistrial or provide a curative instruction when Detective Blough testified about appellant and a similar incident that had occurred.
 {¶ 17} It is within the sound discretion of the trial court to grant or deny a motion for mistrial. State v. Garner (1995),74 Ohio St.3d 49, 59. An appellate court will not disturb the decision of the trial court absent a showing that the accused has suffered material prejudice. State v. Sage (1987), 31 Ohio St.3d 173, 182. "Moreover, mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." Garner at 59.
 {¶ 18} In the case sub judice, Detective Blough stated that she "received a teletype or general teletype *** at the Police Department regarding a similar incident that had occurred." Appellant's attorney objected and the trial court overruled appellant's objection. A side bar conversation took place between appellant's attorney, Mr. Carfolo, and the prosecutor, Mr. Muldowney:
 {¶ 19} "MR. CARFOLO: For purposes of the record, I renew my Motion for a Mistrial.
 {¶ 20} "Detective Blough testified that she received information regarding a similar incident involving [appellant]. ***
 {¶ 21} "THE COURT: Out of fairness, I don't think she said regarding [appellant]. She said something about similar incident and then all hell broke out ***.
 {¶ 22} "***
 {¶ 23} "MR. CARFOLO: *** I think it paints a picture that the Jury may derive that there was a similar situation occurred, point to [appellant] and just think well he did this. ***
 {¶ 24} "MR. MULDOWNEY: *** [W]hat I heard was she said there was a similar incident but she didn't say involving [appellant]. Maybe she was heading there, but she was stopped.
 {¶ 25} "MR. CARFOLO: *** I don't think it's a big leap in logic. She was referring to [appellant]. ***
 {¶ 26} "THE COURT: *** At this stage of the game, and ruling only, of course, on what happened thus far in the trial, the Motion for mistrial is overruled. ***"
 {¶ 27} Here, based on the foregoing colloquy, Detective Blough did not specifically mention that appellant was involved in the "similar incident" that occurred. Further, Detective Blough's testimony dealt with a "similar incident" and not a prior arrest. The statement made by Detective Blough did not directly relate to appellant and it did not refer to a prior arrest. Further, appellant did not prove that he suffered material prejudice as a result of the statement; nor, did he demonstrate that he did not receive a fair trial. Hence, it is our determination that the trial court did not commit an abuse of discretion. Appellant's second assignment of error lacks merit.
 {¶ 28} In the third assignment of error, appellant contends that his conviction for robbery was not based upon sufficient evidence and that the conviction was against the manifest weight of the evidence.
 {¶ 29} In State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 WL 738452, at 4, this court stated that:
 {¶ 30} "`Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while `manifest weight' contests the believability of the evidence presented.
 {¶ 31} "`"*** (T)he test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiryabout due process. It raises a question of law, the resolution of whichdoes not allow the court to weigh the evidence. ***"' State v. Davis
(1988), 49 Ohio App.3d 109, 113." (Emphasis sic.)
 {¶ 32} A reviewing court, when addressing whether a verdict is against the manifest weight of the evidence, reviews:
 {¶ 33} "`[T]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. ***'" Davis, 49 Ohio App.3d at 113.
 {¶ 34} Here, appellant was found to have committed robbery, in violation of R.C. 2911.02(A), which provides that "[n]o person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 35} "(1) Have a deadly weapon on or about the offender's person or under the offender's control;
 {¶ 36} "(2) Inflict, attempt to inflict, or threaten to inflict physical harm on another;
 {¶ 37} "(3) Use or threaten the immediate use of force against another."
 {¶ 38} The Revised Code defines physical harm to persons as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).
 {¶ 39} Here, Hanick, the victim, attested that appellant punched her in the eye. Officer Krieger also noticed Hanick's eye was red and watery. Reviewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found that appellant inflicted physical harm on Hanick as provided in R.C. 2901.01(A)(3). Thus, the state presented sufficient evidence to prove the physical harm element of robbery.
 {¶ 40} Furthermore, the state presented the testimony of Patrolman Stephenson, Officer Krieger, Detective Blough, Hanick, Desko, Roe, and Matty. Appellant presented no witnesses on his behalf. It is within the discretion of the trier of fact to determine the credibility of witnesses and the weight to be given to their testimony. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 41} In the case at bar, it is apparent that the fact finder gave credence to the state's witnesses. The state's case involved more than enough testimonial evidence upon which to convict appellant of the offense for which he was charged. The state demonstrated that appellant's automobile was parked behind the Family Dollar Store minutes before the robbery took place. Hanick testified that it was appellant who demanded the money and punched her in the eye. Desko recognized that appellant was in the Family Dollar Store at the time of the robbery. Roe and Matty identified appellant as the individual they saw run to the gray car that was parked in the back of the building and drive away. All four witnesses identified appellant as the man they saw that day. Thus, we conclude that there was sufficient evidence presented by the state to convict appellant of robbery.
 {¶ 42} In addition, there was ample evidence introduced at trial to support the conviction. The state presented competent, credible evidence that appellant knowingly caused physical harm to the victim. The character of this evidence was not incredible, and the jury did not lose its way. There was ample direct evidence presented by the victim which was uncontradicted. Thus, the trier of fact could reasonably conclude that appellant committed a robbery. Hence, the verdict was not against the manifest weight of the evidence. Since the evidence introduced at trial was sufficient as a matter of law, and the conviction was not against the manifest weight of the evidence, we affirm appellant's conviction. Appellant's third assignment of error is meritless.
 {¶ 43} For his final assignment of error, appellant posits that he was denied due process when the trial court overruled the motion to suppress his identification.
 {¶ 44} The Supreme Court of Ohio has held:
 {¶ 45} "When a witness has been confronted with a suspect before trial, due process requires a court to suppress her identification of the suspect if the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances." State v. Waddy (1992), 63 Ohio St.3d 424, 438, citingNeil v. Biggers (1972), 409 U.S. 188 and Manson v. Brathwaite (1977),432 U.S. 98.
 {¶ 46} The Waddy court set forth a two-step inquiry to determine whether to suppress an in-court identification. The first question is whether the prior identification procedure was unnecessarily suggestive.Waddy, 63 Ohio St.3d at 438. The second question is "whether, under all the circumstances, the identification was reliable, i.e., whether suggestive procedures created `a very substantial likelihood of irreparable misidentification.'" Id. at 439, quoting Simmons v. UnitedStates (1968), 390 U.S. 377.
 {¶ 47} In the case at bar, the trial court determined that the identification by the witness was reliable. Appellant's issue in his motion to suppress was the identification of appellant by Hanick from a single photograph. Detective Blough testified at the suppression hearing that she took a physical description of the suspect from Hanick and then showed her the BMV image. This image was presented to Hanick less than one hour after the robbery took place. Furthermore, that same image was separately shown to three other witnesses and they too recognized appellant. Appellant has failed to show that the BMV image was unduly suggestive. Hanick observed appellant at the time of the crime and the other witnesses observed appellant before and after the robbery. Additionally, the witnesses were positive in their identification.
 {¶ 48} A cold stand or one-on-one show-up identification may be suggestive under certain circumstances. Nevertheless, such identification procedure is permissible unless there is a substantial likelihood of misidentification. State v. Madison (1980), 64 Ohio St.2d 322, 331. It is the likelihood of misidentification that violates a defendant's right to due process. Neil, 409 U.S. at 198; State v. Jells (1990),53 Ohio St.3d 22, 27. In Neil, 409 U.S. at 199-200, the Supreme Court of the United States held:
 {¶ 49} "[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." See, also, Waddy, 63 Ohio St.3d at 439.
 {¶ 50} The application of these factors to the case at bar demonstrates that there is not a substantial likelihood of irreparable misidentification. First, Hanick was able to observe appellant for several minutes on the day of the incident and was face-to-face with him while he was at the register. Also, Desko observed appellant from a very slight distance as he was browsing in the store and noted he was wearing a jacket and none of the other patrons were. Finally, Roe and Matty were able to observe appellant as he exited the Family Dollar Store after the commission of the crime.
 {¶ 51} Second, in viewing the photograph, both Hanick and Desko quickly identified appellant as the offender. The photographic identification took place at the Family Dollar Store within an hour of the incident. Detective Blough asked the witnesses for a description of the offender before showing them the BMV image. Based on their description, Detective Blough noticed that their description was similar to the image she had of appellant. After Hanick identified appellant, she did not have an opportunity to communicate her selection to Desko.
 {¶ 52} Third, based upon the evidence in this case, appellant's vehicle was identified as being parked in the building that contained the Family Dollar Store and CVS Pharmacy. Thus, after considering the totality of the circumstances surrounding the identification of appellant, there was no substantial likelihood of a misidentification. Appellant's fourth assignment of error is overruled.
 {¶ 53} For the foregoing reasons, appellant's assignments of error are not well-taken. Therefore, the judgment of the Portage County Court of Common Pleas is affirmed.
Judgment affirmed.
William M. O'Neill and Cynthia Westcott Rice, JJ., concur.