OPINION
{¶ 1} Defendant-appellant, Charles T. Jenkins ("Jenkins"), appeals his convictions and the denials of his motions to suppress in the Lake County Court of Common Pleas. Following a jury trial, Jenkins was convicted of one count of Aggravated Robbery, a felony of the first degree in violation of R.C. 2911.01(A)(1) with a firearm specification as set forth in R.C. 2941.145, one count of Carrying Concealed Weapons, a felony of the fourth degree in violation of R.C. 2923.12, and one count of Having Weapons While Under Disability, a felony of the fifth degree in violation of R.C. 2923.13(A)(2). Jenkins was sentenced to serve a seven-year prison term on the Aggravated Robbery charge concurrently with a twelve-month prison term on the Carrying Concealed Weapons charge and a ten-month prison term on the Having Weapons While Under Disability charge. Jenkins was sentenced to an additional, mandatory three-year prison term for the firearm specification for a total term of incarceration of thirteen years. For the following reasons, we affirm Jenkins' convictions.
 {¶ 2} On July 18, 2002, sometime after 2:30 a.m., Ebony Stewart ("Stewart") was walking home from the Brass Grille bar in Painesville, Ohio. Stewart had just passed Martin's Mini-Mart on Prospect Avenue, when she noticed Jenkins exit a black, four-door automobile, stopped at a light on Prospect, and approach her. Jenkins and Stewart walked slowly toward Stewart's parents' house, located on Prospect Avenue three houses from the Mini-Mart. Jenkins introduced himself as "Chuck," asked for a cigarette, and followed Stewart making casual conversation. When they were about a house away from Stewart's house, Jenkins told Stewart to empty her pockets. Stewart replied that she did not have any money. Jenkins pulled a firearm, a .38 special, from his waist and told Stewart to give him her purse. Stewart complied with Jenkins` demand. At this point, Jenkins' attention was distracted by a woman trying to get his attention. When Jenkins turned his back to Stewart, she ran to her house and called the police.
 {¶ 3} Stewart told the dispatcher that she had been robbed of her purse at gunpoint by a man who referred to himself as "Chuck." Stewart described Jenkins as a light-skinned African-American male, with a beard and mustache, wearing a yellow shirt and a red hat. She described the vehicle as a black, four-door vehicle, with two other men inside. She described the gun as silver with something white wrapped around the handle.
 {¶ 4} Within minutes, several Painesville Police Department officers were searching for suspects. Officer Brenda McNeely ("Officer McNeely") spotted a black, four-door Honda Accord stopped at the light at the intersection of West Jackson Street and Richmond Street, less than half of a mile from the location where the robbery occurred. As the car passed through the intersection, Officer McNeely saw that it was being driven by a white woman and that there were three African-American male passengers. One of the passengers was wearing a red hat and was slouching down in the back seat. Officer McNeely followed the vehicle onto Jackson Street before effectuating a stop.
 {¶ 5} The driver of the vehicle was identified as Lynne Hutchinson ("Hutchinson"). The two other passengers, in addition to Jenkins, were identified as Devon Mitchell ("Mitchell") and Anthony Allen ("Allen"). During the search of the vehicle, police found the .38 special with white tape around its handle and wrapped in a yellow shirt, five cartridges, and Stewart's purse in the back seat. The suspects were separated and placed in different patrol cars. Within fifteen minutes, Stewart was brought to the scene by Painesville police. Stewart was shown each of the suspects individually. Stewart did not recognize Hutchinson or Mitchell. Stewart knew Allen as an acquaintance but had not seen him that evening. Stewart identified Jenkins as the man who had robbed her.
 {¶ 6} Jenkins was convicted of Aggravated Robbery with a gun specification, Carrying Concealed Weapons, and Having Weapons While Under Disability following a jury trial between August 6 and August 8, 2003. Jenkins was sentenced on September 8, 2003. This appeal timely follows. Jenkins raises the following assignments of error.
 {¶ 7} "[1.] The trial court erred by declaring the state's witness, Lynn Hutchinson, unavailable to testify and allowing her statement to be read to the jury, in violation of the defendant-appellant's rights to due process, fair trial and to confront witnesses against him pursuant to theFourth, Sixth and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution.
 {¶ 8} "[2.] The trial court erred to the prejudice of the defendant-appellant when it denied his motion to suppress the identification.
 {¶ 9} "[3.] The trial court erred to the prejudice of the defendant-appellant when it overruled his motion to suppress challenging the lawfulness of his statement, in violation of his constitutional rights to due process and against self-incrimination as guaranteed by theFifth, Sixth and Fourteenth Amendments to the United States Constitution and Section 10 and 16, Article I of the Ohio Constitution.
 {¶ 10} "[4.] The trial court erred by failing to dismiss on its own motion the charges against Mr. Jenkins when the State failed to establish the element of the use of a deadly weapon.
 {¶ 11} "[5.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."
 {¶ 12} Jenkins' assignments will be considered out of order.
 {¶ 13} Jenkins' second and third assignments of error both challenge the trial court's denial of his motions to suppress certain evidence. At a suppression hearing, the trial court acts as the trier of fact. City ofRavenna v. Nethken, 2001-P-0040, 2002-Ohio-3129, at ¶ 13, citing Statev. Mills (1992), 62 Ohio St.3d 357, 366. As the trier of fact, the trial court must evaluate the evidence and judge the credibility of the witnesses. Mills, 62 Ohio St.3d at 366, citing State v. Fanning (1982),1 Ohio St.3d 19, 20. "The court of appeals is bound to accept factual determinations of the trial court made during the suppression hearing so long as they are supported by competent and credible evidence." State v.Searls (1997), 118 Ohio App.3d 739, 741. Accepting the trial court's determination of the factual issues, the court of appeals must conduct a de novo review of the trial court's application of the law to those facts. Id.; State v. Stiles, 11th Dist. No. 2002-A-0078, 2003-Ohio-5535, at ¶ 11.
 {¶ 14} In the second assignment of error, Jenkins argues that Stewart's identification of Jenkins the night of the robbery should have been suppressed because it occurred under unnecessarily suggestive and prejudicial circumstances.
 {¶ 15} The test for determining the admissibility of a pretrial identification of a suspect by a witness is a two-step process. State v.Perry, 11th Dist. 2002-T-0035, 2003-Ohio-7204, at ¶ 14, citing Neil v.Biggers (1972), 409 U.S. 188, 197-199. First, the court must determine if the identification procedure used was unduly suggestive. Id. Then, the court addresses the "central question" of "whether under the `totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." Neil, 409 U.S. at 199. "[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Id. at 199-200.
 {¶ 16} The defendant bears the burden of demonstrating that identification procedure employed was unduly suggestive. Perry,
2003-Ohio-7204, at ¶ 15, citing State v. Green (1996),117 Ohio App.3d 644, 652-653. Where the defendant fails to meet its initial burden, the court need not evaluate the likelihood of misidentification under a totality of the circumstances." Id.; State v.Brown, 11th Dist. No. 2002-T-0077, 2003-Ohio-7183, at ¶ 19 (citations omitted).
 {¶ 17} Jenkins argues that the "show up" procedure, by which he was identified by Stewart, was inherently unreliable under the totality of the circumstances. In particular, Jenkins claims that Stewart had only spent a few minutes with Jenkins; that Stewart was distracted by walking away from Jenkins toward her home; that Stewart identified Jenkins by his yellow shirt; and that Stewart had consumed alcohol that evening.
 {¶ 18} There was nothing unduly suggestive about the procedures used in Jenkins' identification. Stewart was located in the back of a police car as the police showed her Jenkins and the other occupants of Hutchinson's vehicle. The police did not provide Stewart any information as to the identity of the suspects. The police stated that a vehicle matching the description Stewart gave the dispatcher had stopped and she was asked if she could identify any of the occupants. The occupants of the vehicle were presented to Stewart individually, at a distance of between fifty and sixty feet, and illuminated by spotlight. Stewart's identification of Jenkins was voluntary and not the result of police prompting.
 {¶ 19} We emphasize that Stewart's identification of Jenkins occurred within twenty minutes of the robbery. "There is no prohibition against a viewing of a suspect alone in * * * a `one-man showup' when this occurs near the time of the alleged criminal act; such a course does not tend to bring about misidentification but rather tends under some circumstances to insure accuracy." Sewell v. Cardwell (C.A.6 1972), 454 F.2d 177, 180
(citation omitted); accord State v. Madison (1980), 64 Ohio St.2d 322, 332
(citation omitted); In re Carter, 4th Dist. Nos. 04CA15 and 04CA16, 2004-Ohio-7285, at ¶ 15 (citations omitted); State v. Randall, 10th Dist. No. 03AP-352, 2003-Ohio-6111, at ¶ 11 (citations omitted); Statev. Platt (Dec.16, 1994) 11th Dist. No. 94-A-0015, 1994 Ohio App. LEXIS 5704, at *12-*13 (citations omitted).
 {¶ 20} Absent a substantial likelihood of misidentification, therefore, Stewart's identification of Jenkins from the "show up" of persons stopped in Hutchinson's vehicle is admissible. State v. Hawn, 11th Dist. No. 2002-P-0042, 2003-Ohio-5868, at ¶ 48, citing Madison,64 Ohio St.2d at 331. Stewart's suppression hearing testimony demonstrates that her identification of Jenkins was made with a high degree of certainty. Stewart testified that she had walked "shoulder to shoulder" with Jenkins and that the street lighting on Prospect was good and that she had a good view of Jenkins' face from the distance of a "few inches" to "maybe a foot." Stewart's physical description of Jenkins and of the clothes Jenkins was wearing was accurate. Jenkins' skin tone is lighter than either Mitchell's or Allen's skin tone. Although Allen, Mitchell and Jenkins all had facial hair, only Jenkins had a mustache and a beard as described by Stewart to the police dispatcher immediately following the robbery. Finally, Jenkins was apprehended by police within minutes of the robbery wearing a yellow shirt and a red hat as Stewart had described. Under these circumstances, there is no substantial likelihood of misidentification.
 {¶ 21} Jenkins second assignment of error is without merit.
 {¶ 22} Jenkins argues in his third assignment of error that the court failed to suppress certain statements Jenkins made to the police after his arrest.
 {¶ 23} It is well-established that prosecutors may not use statements, whether inculpatory or exculpatory, obtained during the custodial interrogation of a defendant unless the police have used procedural safeguards to secure the defendant's Fifth Amendment right against self-incrimination. Miranda v. Arizona (1966), 384 U.S. 436, 444. Essential to the preservation of this right, the defendant must be advised, prior to custodial interrogation, of his right to remain silent and to have legal counsel present at interrogation. Id. at 467-470. Once a suspect invokes his right to remain silent or his right to counsel, the police must cease questioning the suspect. Id. at 473-474.
 {¶ 24} Where the defendant himself initiates a meeting with police, however, "nothing in the Fifth and Fourteenth Amendments would prohibit the police from merely listening to his voluntary, volunteered statements and using them against him at trial." Edwards v. Arizona (1981),451 U.S. 477, 485.
 {¶ 25} "A suspect's decision to waive his Fifth Amendment privilege against compulsory self-incrimination is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct." State v. Dailey
(1990), 53 Ohio St.3d 88, paragraph two of the syllabus; cf. Rhode Islandv. Innis (1980), 446 U.S. 291, 300 ("`Interrogation,' as conceptualized in the Miranda opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself."). "The voluntariness of a waiver of this privilege has always depended on the absence of police overreaching, not on `free choice' in any broader sense of the word."Colorado v. Connelly (1986), 479 U.S. 157, 170.
 {¶ 26} Jenkins objects, first, to statements he made to Officer McNeely during his transportation to the Lake County jail on the morning of his arrest. These statements were made after Officer McNeely mirandized Jenkins and after he had requested counsel. Jenkins made these statements voluntarily. Officer McNeely did not question Jenkins after he had asserted his right to an attorney. Jenkins became agitated when Officer McNeely informed him that he would not be allowed to make a written statement. Jenkins protested that he only "wanted an attorney for the fact that I don't know what's going on." When Officer McNeely refused Jenkins' request to "write [a] statement to defend myself," Jenkins voluntarily explained to her that he had been held at gunpoint and forced to come to Painesville and to wear the yellow shirt and red hat. These statements were properly admitted as Jenkins' voluntary admissions.
 {¶ 27} The trial court also admitted statements made by Jenkins to Sergeant Jeffrey Sherwood ("Sergeant Sherwood") of the Lake County Sheriff's Office. Sergeant Sherwood spoke with Jenkins on two occasions, on July 24, 2002, and on August 14, 2002. On both occasions, Jenkins initiated the contact by sending "kites," a term for requests made by jail inmates. The first of these stated that Jenkins wanted "to speak to someone [at] the drug task unit [because] I have info that can help them." Sergeant Sherwood met with Jenkins at the detective bureau. Sergeant Sherwood, who was not involved with the Painesville police department's investigation, was not aware of the reason for Jenkins incarceration and did not advise Jenkins of his miranda rights. Sergeant Sherwood asked Jenkins if he had sent the kite and what he wanted from the sheriff's office. Jenkins began talking about his involvement in the Stewart robbery. Sergeant Sherwood then contacted the Painesville police department with this information but the Painesville police department declined to send an officer over to take a statement. Sergeant Sherwood then called for the corrections officer to return Jenkins to jail, during which time Jenkins "wouldn't stop talking about [the robbery] even after we kept telling him there is nothing we can do for him." Sergeant Sherwood testified that he never asked Jenkins anything regarding the robbery.
 {¶ 28} The second kite stated that Jenkins wanted "to press charges against Devon Mitchell for kidnapping." Again, Jenkins was brought to the detective bureau. Although Sergeant Sherwood did not mirandize Jenkins, he testified that he only questioned Jenkins about the possible abduction alleged in the kite. Again, Jenkins admitted his involvement in the robbery but claimed that Mitchell had kidnapped him and forced him to participate. According to Jenkins' statements, the alleged abduction had occurred in Willoughby. Therefore, Sergeant Sherwood advised Jenkins that he should contact his attorney and/or the Willoughby police department.
 {¶ 29} Neither of these interviews constituted "custodial interrogation" or were the product of coercive police conduct such as would have required Jenkins to be remirandized or would require the suppression of Jenkins' statements. Both of these interviews were initiated by Jenkins. During the course of these interviews, the police did not question Jenkins regarding the Stewart robbery. Any information regarding the robbery divulged by Jenkins was divulged voluntarily. Accordingly, the trial court did not err by failing to suppress these statements.
 {¶ 30} Jenkins third assignment of error is without merit.
 {¶ 31} In Jenkins' first assignment of error, he argues that the trial court erred by admitting the hearsay testimony of Hutchinson, the driver of the vehicle. Hutchinson, whom the court had declared an unavailable witness, had given a statement to police at the time of Jenkins' arrest. Over the objection of defense counsel, this statement was read into the record as statement against interest pursuant to the hearsay exception contained in Evid.R. 804(B)(3). Jenkins contests the trial court's determination that Hutchinson was an unavailable witness and asserts that the admission of Hutchinson's statement violated his Sixth Amendment to confront the witnesses against him.
 {¶ 32} The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." It has been long recognized that "a major reason underlying the constitutional confrontation rule is to give a defendant charged with crime an opportunity to cross-examine the witnesses against him." Pointer v. Texas
(1965), 380 U.S. 400, 406-407.
 {¶ 33} At the time of Jenkins' trial, the hearsay statements of unavailable witnesses were admissible at trial, even where the declarant was not subject to cross-examination, if the statements bore adequate "indicia of reliability." Ohio v. Roberts (1980), 448 U.S. 56, 66. Hutchinson's statement was admitted under the law as enunciated inRoberts.
 {¶ 34} In Crawford v. Washington (2004), 541 U.S. 36, decided after Jenkins' trial, the United States Supreme Court effectively overruledRoberts as it applied to most criminal cases.[1] In Crawford, the court held that "testimonial" hearsay statements may only be admitted where the witness is unavailable and where there was a prior opportunity to cross-examine the witness. Id. at 68-69 ("[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is that one the Constitution actually prescribes: confrontation.").
 {¶ 35} The Supreme Court did not set forth a comprehensive definition of "testimonial." Id. at 75 ("[w]e leave [that issue] for another day"). The court did provide examples of the type of statements that belong to the "core class" of testimonial statements: "extrajudicial statements * * * contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions"; "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial"; and "[s]tatements taken by police officers in the course of interrogations." Id. at 51-52 (citations omitted). We hold that Hutchinson's statement made to the police in the course of their investigation of the Stewart robbery was "testimonial" as contemplated by the court in Crawford. The statement expressly disclaims any knowledge on the part of Hutchinson, Mitchell or Allen that Jenkins intended to rob Stewart. Clearly, Hutchinson made the statement while cognizant of the potential criminal liability that might result from her statement. Cf.United States v. Cromer (C.A.6 2004), 389 F.3d 662, 674 (finding "[s]tatements made to the authorities who will use them in investigating and prosecuting a crime * * * made with the full understanding that they will be so used" to be testimonial in nature) (citation omitted).
 {¶ 36} In light of the Supreme Court's decision in Crawford, the admission of Hutchinson's statement without her previously being subject to cross-examination violated Jenkins' Sixth Amendment right to confront witnesses.
 {¶ 37} A constitutional error may be considered harmless where it can be said beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. Coy v. Iowa (1988), 487 U.S. 1012,1021-1022 (applying the harmless beyond a reasonable doubt standard ofChapman v. California (1967), 386 U.S. 18, 24, to Confrontation Clause violations); State v. Williams (1983), 6 Ohio St.3d 281, paragraph six of the syllabus (constitutional errors are harmless beyond a reasonable doubt "if the remaining evidence, standing alone, constitutes overwhelming proof of the defendant's guilt").
 {¶ 38} In the present case, the admission of Hutchinson's statement to the police was harmless beyond a reasonable doubt. The substance of the statement is that Hutchinson had driven Jenkins to Painesville that evening so that Allen could pick up some things from his father's house in Painesville; that Jenkins left the vehicle to talk with Stewart; and that Jenkins returned to the vehicle holding a pistol and Stewart's purse. The testimony regarding the group's actions that evening is duplicative of the testimony of Allen given at trial. Allen testified that Jenkins returned to the automobile with the .38 special and Stewart's purse and admitted that he robbed Stewart. Allen provided further testimony that Jenkins emptied the cartridges onto the floor of Hutchinson's vehicle and attempted to hide the gun in the back seat. The victim's own testimony and identification of Jenkins provides the most convincing testimony that Jenkins perpetrated the robbery. Hutchinson's statement contributed nothing to the effect of this overwhelming evidence of Jenkins' guilt and its admission was harmless beyond all reasonable doubt.
 {¶ 39} The first assignment of error is without merit.
 {¶ 40} Under the fourth assignment of error, Jenkins argues that the evidence was insufficient to convict him of aggravated robbery. Specifically, Jenkins asserts that the State failed to prove that he acted with a "deadly weapon" as required by R.C. 2911.01(A)(1) for Aggravated Robbery and as required by R.C. 2923.12(A) for Carrying Concealed Weapons.
 {¶ 41} Pursuant to Crim.R. 29, a defendant may move the trial court for a judgment of acquittal "if the evidence is insufficient to sustain a conviction." Crim.R. 29(A). In the present case, Jenkins never moved the court for acquittal and, thereby, failed to preserve his right to challenge the sufficiency of the evidence on appeal. State v. Beesler,
11th Dist. No. 2002-A-0001, 2003-Ohio-2815, at ¶ 21 ("We have consistently held that an appellant must move for a Crim.R. 29 motion for acquittal at trial in order to preserve the right to appeal on the basis of the sufficiency of the evidence.") (citations omitted).
 {¶ 42} The fourth assignment of error is without merit.
 {¶ 43} In the fifth and final assignment of error, Jenkins argues that his convictions are against the manifest weight of the evidence.
 {¶ 44} Generally, the weight to be given to the evidence and the credibility of the witnesses is primarily for the trier of fact to determine. State v. Thomas (1982), 70 Ohio St.2d 79, at syllabus. A challenge to the weight of the evidence raises a factual issue involving "the inclination of the greater amount of credible evidence." State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52 (emphasis sic) (citation omitted). When reviewing a manifest weight challenge, however, the appellate court sits as the "thirteenth juror." Id. The reviewing court must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id., quoting State v. Martin (1983),20 Ohio App.3d 172, 175.
 {¶ 45} In order to convict Jenkins of Aggravated Robbery, the State was required to show, beyond a reasonable doubt, that Jenkins, "in attempting or committing a theft offense, * * * [had] a deadly weapon on or about [his] person." R.C. 2911.01(A)(1). To convict Jenkins of Carrying Concealed Weapons, the State was required to show, beyond a reasonable doubt, that Jenkins "knowingly carr[ied] * * * on [his] person * * * any * * * firearm * * *." R.C. 2923.12(A)(2). A "firearm" is defined as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant." R.C. 2923.11(B)(1). To convict Jenkins of Having Weapons While Under Disability, the State was required to show, beyond a reasonable doubt, that Jenkins "knowingly * * * carr[ied] * * * any firearm or dangerous ordnance * * * [and] has been convicted of any felony offense of violence." R.C. 2923.13(A)(2).[2]
 {¶ 46} Jenkins argues that the evidence was inconclusive whether he, as opposed to Allen or Mitchell, perpetrated the robbery of Stewart. In support, Jenkins cites to the testimony of Allen and Mitchell that, after the robbery, they argued about who should be blamed for the crime. We disagree.
 {¶ 47} Jenkins' identity as the perpetrator was firmly established by Stewart's eyewitness identification. Stewart's identification was based on Jenkins' physical appearance and dress. In both these respects, Jenkins was distinguishable from Mitchell and Allen. Moreover, Jenkins mischaracterizes the testimony of Mitchell and Allen. Mitchell testified that he was asleep in the front seat of the car and was only fully awakened when dragged from the car by police. Allen testified that there was an argument, or sorts, about who should take the blame. But there is never any question in Allen's testimony about who actually committed the robbery and who should take the blame. The weight of the evidence is overwhelmingly in favor of Jenkins' guilt.
 {¶ 48} Finally, Jenkins asserts that there was no indication that the State had tested the firearm for fingerprints because no trace of the powder or glue used in testing for fingerprints remained visible on the weapon. This supposition is flatly contradicted by the testimony of Mitchell Wisneiewski of the Lake County Crime Lab that he personally tested both the gun and the cartridges for fingerprints, although no prints were detected.
 {¶ 49} Jenkins fifth assignment of error is without merit.
 {¶ 50} For the foregoing reasons, Jenkins' convictions in the Lake County Court of Common Pleas are affirmed.
Ford, P.J., Rice, J., concur.
[1] The Roberts "indicia of reliability" test may still be applied to the admission of non-testimonial hearsay, such as business records, in criminal trials. Cf. Crawford, 541 U.S. at 68.
[2] At trial, Jenkins stipulated to a prior conviction of attempted felonious assault.