OPINION
{¶ 1} In this accelerated calendar appeal, appellant, Lamar Siler ("Siler"), appeals the judgment entered by the Juvenile Division of the Ashtabula County Court of Common Pleas. The trial court adjudicated Siler delinquent and committed him to a juvenile detention facility for an indefinite period ranging from one year to his twenty-first birthday. *Page 2 
 {¶ 2} In June 2006, two handguns were taken from the residence of Randy Shultz. These guns were a .22 caliber Ruger (".22 caliber") and a .32 caliber German pistol (".32 caliber".) On June 24, 2006, those two handguns were found in a car driven by William Burns ("Burns".) In June 2006, Burns was the brother of Schultz's daughter's boyfriend and was twenty-eight years old.
 {¶ 3} On June 24, 2006, Burns called Siler on the telephone and asked him if he was interested in purchasing some "toys." Siler, who was seventeen years old at the time, was interested in the offer and needed a ride, so he agreed to have Burns pick him up. Burns met Siler at a local intersection, and Siler got into the car.
 {¶ 4} Initially, Burns showed Siler the .22 caliber gun. Siler indicated he was not interested in the .22 caliber gun. Thereafter, Burns pulled into a bay of a local car wash. After the car was parked, Burns reached under the passenger seat and retrieved the .32 caliber gun. While they were in the parked car, Burns and Siler noticed Sergeant John Koski of the Ashtabula City Police Department drive into the car wash parking lot. Burns and Siler exited the vehicle and walked in opposite directions. Sergeant Koski stopped them to investigate the situation.
 {¶ 5} After being questioned, Burns informed Sergeant Koski that the .22 caliber weapon was under the driver's seat. Sergeant Koski searched the vehicle and discovered the .22 caliber weapon under the driver's seat and the .32 caliber weapon under the front, passenger seat where Siler had been sitting. Burns and Siler were both arrested. When Siler was searched incident to the arrest, officers found five rounds of .32 caliber ammunition in his pocket. Siler claimed Burns told him this ammunition was for a third gun Burns was to show him later that day. However, *Page 3 
Patrolman Will Parkomaki of the Ashtabula City Police Department successfully test-fired the .32 caliber weapon using two of the rounds found on Siler.
 {¶ 6} A complaint was filed alleging Siler to be a delinquent child. The complaint alleged that Siler committed the offenses of receiving stolen receiving stolen property, in violation of R.C. 2913.51, a fourth-degree felony if committed by an adult, and carrying a concealed weapon, in violation of R.C. 2923.12. The carrying a concealed weapon charge alleged that Siler had previously been convicted of an offense of violence, therefore, this offense was charged as a fourth-degree felony if committed by an adult.
 {¶ 7} Siler pled not true to the charges against him. A bench trial was held. The trial court adjudicated Siler delinquent as to both charges. The trial court committed Siler to the juvenile detention facility for indefinite terms ranging from a minimum of six months to a maximum of his twenty-first birthday on both charges. These commitments were ordered to be served consecutively, resulting in an aggregate commitment of a minimum of one year to a maximum of his twenty-first birthday.
 {¶ 8} Siler raises six assignments of error. These assigned errors will be addressed out of numerical order. Siler's second assignment of error is:
 {¶ 9} "The trial court violated Lamar Siler's right to due process under the Fifth and Fourteenth Amendments to the United States Constitution, Article I, Section 16 of the Ohio Constitution, and Juvenile Rule 29(E)(4) when it adjudicated him delinquent of receiving stolen property absent proof of every element of the charge against him by sufficient, competent, and credible evidence." *Page 4 
 {¶ 10} Initially, we note that Siler failed to move to dismiss the charges, pursuant to Juv.R. 29. There is a split of authority from this court as to whether a defendant's failure to object to the sufficiency of the evidence at trial waives that argument on appeal. In State v.Jenkins, this court held that a defendant is required to move the court for acquittal in order to preserve a sufficiency of the evidence challenge on appeal.[1] However, in State v. Perry, this court noted that "the Ohio Supreme Court has held that a defendant's not guilty plea preserves an argument relating to the sufficiency of the evidence for appeal."[2] Therefore, this court held that a defendant's failure to move for acquittal does not waive a sufficiency of the evidence challenge on appeal.[3] Due to the split of authority on this issue, for the purposes of this appeal, we will proceed as though Siler has not waived his constitutional right to challenge the sufficiency of the evidence.[4]
 {¶ 11} When determining whether there is sufficient evidence presented to sustain a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."[5] *Page 5 
 {¶ 12} Siler was charged with receiving stolen property in violation of R.C. 2913.51, which provides, in part:
 {¶ 13} "(A) No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense."
 {¶ 14} The evidence from the hearing indicated that Burns stole the guns from Shultz. There was no evidence presented suggesting that Siler was informed the guns were stolen.
 {¶ 15} We will examine whether there was sufficient evidence for the trial court to conclude that Siler had "reasonable cause to believe" the guns were stolen. The trial court found that Siler had reason to believe the guns were stolen because of the "illegitimate" nature of the proposed sale. The trial court stated that legitimate sales of guns take place in a gun store with appropriate permits. However, just because the proposed sale may have been "illegitimate," does not impute knowledge to Siler that the guns were stolen. Siler was seventeen years old with a prior adjudication for a violent offense. Presumably, he would not have been able to purchase a handgun from a reputable firearms dealer. He responded to Burns' proposal and considered purchasing the guns second hand. The guns could have been owned by Burns, either legitimately or illegitimately, and he could have sought to liquidate them by selling them to Siler on the "black market."
 {¶ 16} We recognize there may be instances when the price of an object should alert a potential buyer to the fact that the item might be stolen. For example, if someone tries to sell a new television set with a retail price of $1,000 for $100, the *Page 6 
buyer may have reason to believe the television set was stolen. However, in this matter, there was no evidence presented as to the value of the guns or that proposed sale price of $150 per gun was substantially discounted.
 {¶ 17} In this matter, there was a complete lack of evidence that Siler was aware that the guns were stolen.
 {¶ 18} There was insufficient evidence to sustain Siler's adjudication for receiving stolen property.
 {¶ 19} Siler's second assignment of error has merit.
 {¶ 20} Siler's third assignment of error is:
 {¶ 21} "The trial court violated Lamar Siler's right to due process under the Fifth and Fourteenth Amendments to the United States Constitution, Article I, Section 16 of the Ohio Constitution, and Juvenile Rule 29(E)(4) when it adjudicated him delinquent of carrying a concealed weapon absent proof of every element of the charge against him by sufficient, competent, and credible evidence."
 {¶ 22} Siler was charged with carrying a concealed weapon in violation of R.C. 2923.12, which provides, in part:
 {¶ 23} "(A) No person shall knowingly carry or have, concealed on the person's person or concealed ready at hand, any deadly weapon or dangerous ordinance."
 {¶ 24} "A person acts knowingly, regardless of his purpose, when he is aware his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."[6] *Page 7 
 {¶ 25} This court has interpreted the "ready at hand" language of R.C.2923.12 to include a firearm located under the defendant's seat in an automobile.[7] This is especially true where, as in the case sub judice, the defendant has bullets in his pocket that are capable of being fired from the firearm located under his seat in the automobile.[8]
 {¶ 26} Siler had five .32 caliber bullets in his pocket when he was arrested. Moments before he was arrested, he was seen sitting in the front passenger seat of Burns' vehicle. A .32 caliber firearm was found under the front passenger seat of Burns' vehicle.
 {¶ 27} There was sufficient evidence to sustain Siler's adjudication for carrying a concealed weapon.
 {¶ 28} Siler's third assignment of error is without merit.
 {¶ 29} His first assignment of error is:
 {¶ 30} "The trial court violated Lamar Siler's right to confrontation under the Sixth Amendment to the United States Constitution and Evidence Rule 802 when it permitted the state to introduce testimonial statements made by a witness during a police investigation, without providing Lamar the opportunity for cross-examination."
 {¶ 31} Siler claims the trial court admitted hearsay evidence in violation of the Rules of Evidence and the Confrontation Clause of theSixth Amendment to the United States Constitution. Burns did not testify at the hearing. Sergeant Koski testified as to *Page 8 
certain statements Burns made. The following colloquy occurred during the redirect examination of Sergeant Koski:
 {¶ 32} "Q. Sergeant, upon questioning by [defense counsel], he asked you whether or not Mr. Burns, the co-defendant, indicated anything about [Siler's] involvement in this incident, correct?
 {¶ 33} "A. Yes. Ma'am.
 {¶ 34} "Q. And you said when you did [Siler] told him that he had been selling crack and he needed the guns and was going to by them, correct?
 {¶ 35} "Q. Mr. Burns said he had bought hundred of dollars and from what he referred to as `Money' or Lamar Siler and that [Siler] indicated he wanted to buy the handguns for one fifty a piece — $150 a piece.
 {¶ 36} "Q. And did Mr. Burns indicate anything else to you concerning the handguns — concerning [Siler] and the handguns?
 {¶ 37} "A. He said —
 {¶ 38} "[by defense counsel]: Objection, Your Honor.
 {¶ 39} "[The trial court]: Overruled.
 {¶ 40} "A. He said he picked up what he referred to as "Money" or Mr. Siler on Ann Avenue, showed him the .32 caliber handgun. Mr. Siler put it into his pocket then he drove to the car wash.
 {¶ 41} "Q. Okay. And did he indicate anything else how it got out of Mr. Siler's back pocket?
 {¶ 42} "A. No, sir, he did not. I'm sorry, no Ma'am, he did not.
 {¶ 43} "Q. And he paid "Money", that's what Mr. Burns called Lamar Siler?" *Page 9 
 {¶ 44} These statements from Burns introduced through Sergeant Koski's testimony are hearsay statements. They are out of court statements offered to prove the truth of the matter asserted.[9] In addition, these statements also raise Confrontation Clause issues.
 {¶ 45} "`Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law — as does Roberts,[10] and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination.'"[11]
 {¶ 46} "For Confrontation Clause Purposes, a testimonial statement includes one made `under circumstance which would lead an objective witness reasonably to believe that the statement was available for use at a later trial.'"[12]
 {¶ 47} In this matter, Burns' statements were given to Sergeant Koski as part of a police interview. Statements given during a police interrogation are testimonial.[13] Since these statements were testimonial, their admission violated the Confrontation Clause, and because Siler did not have an opportunity to cross-examine Burns.
 {¶ 48} The state argues that defense counsel "opened the door" for this testimony by raising the issue regarding Burns' statements during cross-examination of Sergeant Koski. The term "open the door" is generally used in an evidentiary *Page 10 
analysis where the state may introduce evidence as a result of the evidence presented by the defense. For example, when an accused introduces evidence of a pertinent character trait, the state is permitted to introduce evidence to rebut that evidence.[14] However, in this matter, we are not only dealing with the rules of evidence, but also a constitutional error. Defense counsel elicited hearsay statements in its cross-examination of Sergeant Koski from which the state did not object. The state then sought to elicit additional hearsay statements, which also violated the Confrontation Clause of the United States Constitution. Defense counsel properly objected to this evidence. We cannot say this inadmissible evidence became admissible because defense counsel "opened the door."
 {¶ 49} The state also argues that the error was invited, because defense counsel initially questioned Sergeant Koski about certain statements Burns made. We disagree. While defense counsel questioned Sergeant Koski about some of Burns' statements, defense counsel clearly objected to the statements elicited during redirect examination. Thus, we cannot consider this error to be "invited error."
 {¶ 50} We next determine whether this error was harmless. A constitutional error may be considered harmless only if the court determines that the error was "harmless beyond a reasonable doubt."[15] "Whether a Sixth Amendment error was harmless beyond a reasonable doubt is not simply an inquiry into the sufficiency of the remaining evidence. Instead, the question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction."[16] *Page 11 
 {¶ 51} In this matter, .32 caliber bullets were found in Siler's pocket. A .32 caliber firearm capable of firing those bullets was found under Siler's seat in the automobile. This was overwhelming evidence that Siler committed the offense of carrying a concealed weapon. The remainder of the evidence, including the inadmissible statements from Burns, was merely cumulative. In conclusion, we consider "the [inadmissible] testimony harmless beyond a reasonable doubt," in that "there is not a reasonable possibility" Sergeant Koski's testimony regarding Burns' statements contributed to Siler's adjudication for carrying a concealed weapon.[17]
 {¶ 52} Siler's first assignment of error is without merit.
 {¶ 53} Siler's fourth assignment of error is:
 {¶ 54} "Lamar Siler's adjudication and commitment must be reversed and remanded for a new trial because his adjudication is against the manifest weight of the evidence."
 {¶ 55} In our analysis of Siler's second assignment of error, we have concluded that his adjudication for receiving stolen property was based upon insufficient evidence. Therefore, his adjudication on that count will be vacated, and his manifest weight of the evidence argument is moot as it relates to the receiving stolen property charge.[18]
 {¶ 56} In determining whether a decision is against the manifest weight of the evidence, the Supreme Court of Ohio has adopted the following language as a guide:
 {¶ 57} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether *Page 12 
in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the [adjudication].'"[19]
 {¶ 58} The weight to be given to the evidence and the credibility of witnesses are primarily matters for the trier of fact to decide.[20]
 {¶ 59} Again, when Siler was arrested, he had five .32 caliber bullets in his pocket. A .32 caliber firearm was found under the seat in which he was sitting in Burns' automobile. Siler testified that the bullets found in his pocket were for another firearm that Burns was to show him later that day. However, Siler's testimony was refuted by the fact that two of the bullets were successfully test-fired from the .32 caliber gun found under Siler's seat. Apparently, in light of the evidence regarding the test-fire, the trial court did not find Siler's testimony that the bullets were for a different gun credible.
 {¶ 60} We cannot say the trial court lost its way or created a manifest miscarriage of justice by adjudicating Siler delinquent in regard to the carrying a concealed weapon charge.
 {¶ 61} Siler's fourth assignment of error is moot regarding the receiving stolen property charge and is without merit regarding the carrying a concealed weapon adjudication.
 {¶ 62} Siler's fifth assignment of error is: *Page 13 
 {¶ 63} "The juvenile court violated R.C. 2923.12, R.C. 2901.08, and Lamar Siler's right to due process under the Fifth andFourteenth Amendments to the United States Constitution, Article I, Section 16 of the Ohio Constitution, when it adjudicated him delinquent for carrying a concealed weapon, a felony of the fourth degree if committed by an adult."
 {¶ 64} R.C. 2923.12 provides, in part:
 {¶ 65} "(G)(1) Whoever violates this section is guilty of carrying concealed weapons. Except as otherwise provided in this division or division (G)(2) of this section, carrying concealed weapons in violation of division (A) of this section is a misdemeanor of the first degree. Except as otherwise provided in this division or division (G)(2) of this section, if the offender previously has been convicted of a violation of this section or of any offense of violence, if the weapon involved is a firearm that is either loaded or for which the offender has ammunition ready at hand, or if the weapon involved is dangerous ordinance, carrying concealed weapons in violation of division (A) of this section is a felony of the fourth degree."
 {¶ 66} Siler argues that the trial court erred by considering his prior juvenile "adjudication" as a conviction for purposes of enhancing the carrying a concealed weapons charge to a fourth-degree felony.
 {¶ 67} R.C. 2901.08 provides, in part:
 {¶ 68} "(A) If a person is alleged to have committed an offense and if the person previously has been adjudicated a delinquent child or juvenile traffic offender for a violation of a law or ordinance, except as provided in division (B) of this section, the adjudication as a delinquent child or as a juvenile traffic offender is a conviction for a *Page 14 
violation of the law or ordinance for purposes of determining the offense with which the person should be charged and, if the person is convicted of or pleads guilty to an offense, the sentence to be imposed upon the person relative to the conviction or guilty plea."
 {¶ 69} Several courts have applied R.C. 2901.08 to situations where a prior juvenile adjudication is used as a conviction to enhance a crime that an adult is standing trial for.[21] While Siler acknowledges this line of cases, he contends his case is different because the initial juvenile adjudication is being used in a subsequent juvenile proceeding. We note the Fifth Appellate District has recently applied R.C. 2901.08
to a situation analogous to the case sub judice, and held that a juvenile adjudication may be used to enhance an offense in a subsequent juvenile proceeding.[22]
 {¶ 70} Siler argues that State v. Prether is controlling.[23] InState v. Prether, the Second Appellate District held that R.C. 2901.08
was not applicable in a proceeding involving a sexual predator classification, which the court noted was civil in nature.[24] While all juvenile proceedings are technically civil in nature,[25] there are "`criminal aspects'" to certain cases.[26] Therefore, the Fifth District declined to apply State v. Prether to a situation where the juvenile is facing charges where a prior adjudication is being used to enhance the charge.[27] *Page 15 
 {¶ 71} We agree with the Fifth District's analysis that a juvenile adjudication may be used to enhance a subsequent charge in juvenile court.[28]
 {¶ 72} Siler's fifth assignment of error is without merit.
 {¶ 73} Siler's sixth assignment of error is:
 {¶ 74} "Lamar Siler was denied the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution."
 {¶ 75} In State v. Bradley, the Supreme Court of Ohio adopted the following test to determine if counsel's performance is ineffective: "[counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation, and, in addition, prejudice arises from counsel's performance."[29] Moreover, "`a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. * * * If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, * * * that course should be followed.'"[30]
 {¶ 76} Siler contends his trial counsel was ineffective for failing to (1) object to the improper hearsay evidence at issue in the first assignment of error, (2) object to the trial court's adjudication of the felony-level charge of carrying a concealed weapon, and (3) move the trial court to dismiss the charges due to insufficient evidence. *Page 16 
 {¶ 77} Initially, we note that Siler's trial counsel did object to the hearsay testimony of Sergeant Koski regarding the statements from Burns that we found to violate the Confrontation Clause. Since there was a proper objection, trial counsel was not ineffective on this ground.
 {¶ 78} In regard to Siler's contention that trial counsel was ineffective for failing to object to the trial court's imposition of the felony-level enhancement for the carrying a concealed weapon charge, we concluded in our analysis of Siler's fifth assignment of error that no error occurred. Siler's prior juvenile conviction was permitted to be used to enhance the level of the carrying a concealed weapon charge.[31]
 {¶ 79} Finally, we address Siler's argument that his trial counsel was ineffective for failing to move to dismiss the charges based on insufficient evidence. As we noted in our analysis of Siler's second assignment of error, there is a split of authority from this court as to whether counsel's failure to move for acquittal or dismissal constitutes a waiver of that argument on appeal. Due to this uncertainty, we addressed Siler's second and third assigned errors on their merits and, in fact, found merit to Siler's second assignment of error. Therefore, we cannot conclude that Siler's was prejudiced by his trial counsel's allegedly deficient performance.
 {¶ 80} Siler's sixth assignment of error is without merit.
 {¶ 81} The trial court's decision regarding Siler's adjudication for carrying a concealed weapon is affirmed. The trial court's judgment regarding Siler's adjudication for receiving stolen property is reversed. This matter is remanded to the trial court for further proceedings consistent with this opinion. Specifically, the trial *Page 17 
court is instructed to vacate the adjudication finding Siler to be delinquent in regard to the receiving stolen property charge and enter a judgment of acquittal in relation to that charge.
DIANE V. GRENDELL, J., concurs in part, dissents in part, with Concurring/Dissenting Opinion,
WILLIAM M. O'NEILL, J., concurs in part, dissents in part, with Concurring/Dissenting Opinion.
[1] State v. Jenkins, 11th Dist. No. 2003-L-173, 2005-Ohio-3092, at ¶ 41, citing State v. Beesler, 11th Dist. No. 2002-A-0001, 2003-Ohio-2815, at ¶ 21.
[2] State v. Perry, 11th Dist. No. 2004-L-077, 2005-Ohio-6894, at ¶ 31, citing State v. Jones (2001), 91 Ohio St.3d 335, 346 and State v.Carter (1992), 64 Ohio St.3d 218, 223.
[3] Id. citing State v. Shadoan, 4th Dist. No. 03CA764,2004-Ohio-1756, at ¶ 16; and Mayfield Hts. v. Molk, 8th Dist. No. 84703,2005-Ohio-1176.
[4] See State v. Miller, 11th Dist. No. 2004-P-0049, 2005-Ohio-6708, at ¶ 67.
[5] State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307.
[6] R.C. 2901.22(B).
[7] State v. Townsend (1991), 77 Ohio App.3d 651, 657.
[8] Id.
[9] Evid.R. 801(C).
[10] Ohio v. Roberts (1980), 448 U.S. 56.
[11] State v. Stahl, 111 Ohio St.3d 186, 2006-Ohio-5482, at ¶ 16, quoting Crawford v. Washington (2004), 451 U.S. 36, 68.
[12] Stahl, supra, at paragraph one of the syllabus, quotingCrawford at 52.
[13] Id. at ¶ 17, quoting Crawford at 52-53.
[14] See Evid.R. 404(A)(1).
[15] State v. Conway, 108 Ohio St.3d 214, 2006-Ohio-791, at ¶ 78, citing Chapman v. California (1967), 386 U.S. 18, 24.
[16] Id.
[17] See State v. Haines, 112 Ohio St.3d 393, 2006-Ohio-6711, at ¶ 64.
[18] App.R. 12(A)(1)(c).
[19] (Citations omitted.) State v. Thompkins (1997),78 Ohio St.3d 380, 387.
[20] See State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
[21] See State v. Kelly, 154 Ohio App.3d 285, 2003-Ohio-4783, at ¶ 7-14; State v Glover (Aug. 19, 1999), 5th Dist. No. 99CA30, 1999 Ohio App. LEXIS 3881, at *2-4.
[22] In re Fogle, 5th Dist. No. 2006CA00131, 2007-Ohio-553, at ¶47.
[23] State v. Prether (2001), 141 Ohio App.3d 6.
[24] Id. at 8.
[25] Fogle, supra, at ¶ 37, citing State v. Anderson (2001),92 Ohio St.3d 63.
[26] Id. at ¶ 40, quoting In re Gault (1967), 387 U.S. 1.
[27] Id. at ¶ 42-43.
[28] Id. at ¶ 47.
[29] State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus, adopting the test set forth in Strickland v. Washington
(1984), 466 U.S. 668.
[30] Id. at 143, quoting Strickland, 466 U.S. at 697.
[31] Fogle, supra, at ¶ 47.